

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2004

# McKeithan v. Varner

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1913

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"McKeithan v. Varner" (2004). *2004 Decisions.* Paper 384.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/384

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NO. 02-1913

————

DENNIS MCKEITHAN,

Appellant

v.

BEN VARNER, SUPERINTENDENT;
THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE
ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-cv-00932)
District Judge: Hon. Jay C. Waldman

————

Argued March 8, 2004

Before: SLOVITER, NYGAARD, Circuit Judges and OBERDORFER, District Judge[*]

(Filed: August 30, 2004)

————

_____

[*]    Hon. Louis F. Oberdorfer, Senior District Judge, United States District
Court for the District of Columbia, sitting by designation.

Sondra R. Rodrigues     (Argued)
Philadelphia, PA 19119-0267

        Attorney for Appellant

Paul D. Henriksen       (Argued)
        Assistant District Attorney
Thomas W. Dolgenos
        Chief, Federal Litigation
Ronald Eisenberg
        Deputy, Law Division
Arnold Gordon
        First Assistant District Attorney
Lynne Abraham
        District Attorney
Philadelphia District Attorney's Office
Philadelphia, PA 19102

        Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Dennis McKeithan appeals the District Court's March 12, 2002 Order dismissing his petition for a writ of habeas corpus as time-barred and ineligible for equitable tolling. McKeithan argues that he faced extraordinary circumstances that warrant an evidentiary hearing on the availability of equitable tolling. We will affirm.

**I.**

Because the parties are familiar with the factual and procedural history of this case, we refer only to those facts that are pertinent to the issue of equitable tolling.

2

McKeithan was convicted by a jury of five counts of robbery, one count of conspiracy, and one count of possession of an instrument of crime in the Philadelphia Court of Common Pleas on June 6, 1983.  McKeithan was sentenced to five consecutive terms of ten to twenty years imprisonment for the robbery convictions, and five to ten additional years for conspiracy.  On May 10, 1985, the Pennsylvania Superior Court affirmed.  He did not seek allocatur from the Pennsylvania Supreme Court.

Between 1994 and 2000, McKeithan filed three petitions for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, alleging ineffective assistance of counsel, judicial abuse of discretion, judicial prejudice, prosecutorial misconduct, and governmental interference.  McKeithan's first PCRA petition, filed on January 12, 1994, was denied on August 7, 1995.  McKeithan states that he attempted to appeal his PCRA denial, but the Clerk of Quarter Sessions eventually informed him on August 8, 1996 that it had not received his appeal.  On August 11, 1996, McKeithan requested that the Clerk "look into [the] situation" with his appeal.  App. at 207-08.  McKeithan alleges that, at some unspecified date thereafter, he filed a nunc pro tunc notice of appeal.  However, there is no record of this alleged filing.

McKeithan filed a second pro se PCRA petition on January 16, 1997.  The trial court denied his petition as untimely on September 18, 1997 and the Superior Court affirmed that decision on July 20, 1999.  McKeithan filed for a petition for allocatur nunc pro tunc in the Pennsylvania Supreme Court on August 21, 1999, alleging that, "[d]ue to a

3

statewide prison lockdown," he was unable to file a timely appeal and instead mailed his appeal one day after the thirty-day filing period had expired. Appellant's Br. at 16. The Pennsylvania Supreme Court denied the allocatur petition on February 25, 2000. McKeithan took no further action at that time.

On August 14, 2000, McKeithan filed a motion to "Correct Illegal Sentence." The Court of Common Pleas treated this motion as a third PCRA petition, and eventually denied it on May 8, 2001.

While his motion to "Correct Illegal Sentence" was pending, McKeithan filed this habeas action pursuant to 28 U.S.C. § 2254 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") on February 26, 2001, which the District Court referred to the Magistrate Judge. On January 29, 2002, the Magistrate Judge issued a Report and Recommendation ("R&R") to deny McKeithan's petition as time-barred by AEDPA's one-year statute of limitations, which requires that a state prisoner file a federal habeas petition within one year of the day on which the prisoner's state conviction becomes final. See 28 U.S.C. § 2244(d)(1)(A); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). McKeithan asked the court to equitably toll the statute of limitations for AEDPA based on his extraordinary diligence in the face of adverse circumstances. The Magistrate Judge denied that request, concluding that, even giving McKeithan the benefit of the doubt regarding his "lost" PCRA filings, he still exceeded the one-year statutory filing period in which to file his habeas action. The Magistrate Judge declined to recommend equitable

4

tolling of the statute of limitations on the ground that McKeithan neither diligently pursued his claims nor offered a satisfactory explanation for his untimeliness. The District Court adopted the Magistrate Judge's Report and Recommendation and dismissed McKeithan's petition for habeas corpus.

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254(a) and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Our review of McKeithan's equitable tolling claim is plenary. Jones v. Morton, 195 F.3d 153, 156 (3d Cir. 1999).

Where a defendant's conviction becomes final prior to the enactment of AEDPA, the one-year period begins to run on the effective date of AEDPA, April 24, 1996, which provides the defendant a period up until, and including, April 23, 1997 to file a timely petition. Burns, 134 F.3d at 111. However, the statute of limitations may be equitably tolled when a state prisoner faces extraordinary circumstances that prevent her or him from filing a timely habeas petition and the prisoner has nonetheless exercised reasonable diligence in attempting to vindicate her or his claims. Fahy v. Horn, 240 F.3d 239, 244-45 (3d Cir. 2000).

We have stated that "[c]ourts must be sparing in their use of equitable tolling," Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999), applying equitable tolling "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179

5

(3d Cir. 1998) (quotations marks and citation omitted).  Equitable tolling is appropriate

> only when the principles of equity would make the rigid
> application of a limitation period unfair.  Generally, this will
> occur when the petitioner has in some extraordinary way been
> prevented from asserting his or her rights.  The petitioner
> must show that he or she exercised reasonable diligence in
> investigating and bringing the claims.  Mere excusable
> neglect is not sufficient.

Miller v. New Jersey State Dep't. of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998)

(quotations and citations omitted); see also Jones v. Morton, 195 F.3d at 159.

Because the Commonwealth of Pennsylvania does not contest that McKeithan was

entitled to equitable tolling from January 1994 to August 11, 1996, we focus our inquiry

on the period following August 11, 1996 and need not address McKeithan's allegations of

ineffective assistance of counsel or judicial mismanagement during the pendency of

McKeithan's first PCRA petition.

McKeithan contends that he exercised reasonable diligence in the face of

extremely adverse conditions and thus is entitled to an evidentiary hearing on equitable

tolling under Fahy v. Horn, 240 F.3d at 239; Nara v. Frank, 264 F.3d 310 (3d Cir. 2001),

and Miller, supra.[1]  McKeithan's reliance on Fahy, Nara, and Miller is misplaced.  Fahy,

which is limited to capital cases, Merritt v. Blaine, 326 F.3d 157, 170 (3d Cir. 2003),

---

[1]  At the close of McKeithan's brief, he also contends that all of his filings should be considered as one continuous PCRA petition that relate back to his first timely-filed PCRA petition.  Appellant's Br. at 19-20.  Because this court granted a certificate of appealability limited to the issue of equitable tolling, this question is not properly before the court.

involved a state prisoner facing the death penalty without alterative recourse. As we stated in Fahy, "death is different," and the equitable considerations underlying a death-penalty case are not relevant here. Fahy, 240 F.3d at 244 (quoting Caldwell v. Mississippi, 472 U.S. 320, 329 (1985)).

McKeithan's reliance on Nara is similarly misguided. In Nara, we held that a district court could grant equitable tolling where a petitioner's mental incompetence affected the petitioner's ability to file a timely habeas petition and the petitioner's attorney "led [the petitioner] to believe that [the attorney] was going to file the federal habeas petition on his behalf; and [told the petitioner] that there were no time constraints for filing a petition." Nara, 264 F.3d at 320.[2] Here, McKeithan has made no allegations of mental illness, nor has he suggested that his attorneys deceived or misled him. Nara does not support McKeithan's claims.

McKeithan also argues that Miller demands that the court resolve any uncertainty in his favor by granting an evidentiary hearing as to his remaining allegations that his "severely restrictive housing situation" from the early to late 1990's diminished his access to legal resources and phone calls and caused him to miss filing deadlines. This court, however, has rejected the notion that Miller requires evidentiary hearings as of right. Appellant's Br. at 14. We have stated:

---

[2] In Nara, we did not grant equitable tolling to the petitioner, but remanded the case to the district court with instructions to grant an evidentiary hearing to determine the veracity of the petitioner's claims. 264 F.3d at 319-20.

> Miller was the first case in which this court held that AEDPA's statute of limitations may be equitably tolled in appropriate circumstances. Thus, the court [in Miller] remanded so that the District Court could consider the issue in the first instance. In contrast to the facts in Miller, here [appellant] had raised equitable tolling in the District Court, and was unsuccessful. Miller neither holds nor states that an evidentiary hearing must be held in every case where the petitioner alleges deprivation . . . .

Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Here, McKeithan raised equitable tolling before both the Magistrate Judge and the District Judge, and his arguments were unsuccessful; thus, there is no need to remand so the District Court may consider tolling in the first instance. Moreover, his generalized allegations of restricted access to legal resources throughout the 1990's, without more, do not advance his case for equitable tolling because such arguments do not explain his lack of diligence during periods when he was not in restrictive housing.

Critically, although there were periods in which McKeithan demonstrated diligence, McKeithan appeared to have filed nothing in state court between August 11, 1996, when he last inquired about his first PCRA petition, and January 16, 1997, when he filed his second PCRA petition. Similarly, he filed nothing between February 25, 2000, when the Pennsylvania Supreme Court denied his petition for allocatur for his second PCRA claim, and August 14, 2000, when he filed his third PCRA petition (his "Motion to Correct Illegal Sentence."). In sum, McKeithan "has not alleged facts sufficient to show that 'sound legal principles as well as the interests of justice' demand pursuit of the

8

'sparing' doctrine of equitable tolling." See Robinson, 313 F.3d at 143 (quoting Jones, 195 F.3d at 159).[3] We will affirm the judgment of the District Court.

---

[3]    Judge Oberdorfer has written a powerful dissent in support of the application of equitable tolling on behalf of McKeithan, which would permit his petition for habeas corpus to proceed more than 21 years after his conviction, 19 years after his conviction was affirmed by the Pennsylvania Superior Court, and nine years after his first PCRA petition was denied by the state court. Although the Commonwealth has conceded that McKeithan is entitled to equitable tolling for the period from January 1994 to August 11, 1996, the dissent includes the events during that period among the litany of the conduct it claims entitles petitioner to proceed at this late date.

The dissent relies first on the Pennsylvania mailbox rule as applied in Commonwealth v. Castro, 766 A.2d 1283 (Pa. Super. 2001). However, in Castro it was conceded that the pro se PCRA petition was timely mailed and received, and the defect was in the failure of docketing. There was no comparable concession here. Although the dissent concludes that McKeithan's initial PCRA remains pending, notwithstanding his failure to so argue in his brief, his counsel in argument before this court expressly stated in response to our inquiry that there are no PCRA petitions still pending in state court.

The dissent next argues that McKeithan was reasonably diligent. A review of the timeline of his motions does not persuade us. The dissent cites the Ninth Circuit's application of the mailbox rule in Huizar v. Carey, 273 F.3d 1220 (9th Cir. 2001), but no Pennsylvania decision has accepted the Ninth Circuit's application of the mailbox rule, and it is not for us, as a federal court, to make that decision for Pennsylvania.

It would be unfortunate if McKeithan were serving his substantial prison term under the impression that the state system failed him, but even more unfortunate if he were given hope that he was entitled to a federal review that will never come. Equitable tolling is, after all, an extraordinary remedy rarely given. We are not convinced that this is the rare case where it is justified.

9

McKeithan v. Varner
No. 02-1913

OBERDORFER, Senior District Judge, dissenting

The majority affirms the district court's dismissal of McKeithan's petition for a writ of habeas corpus as time-barred because it concludes that equitable tolling ended on August 11, 1996, when McKeithan stopped being diligent. I respectfully dissent.

I am concerned that this result is unfair and legally unnecessary. McKeithan's first petition for review in state court -- which was repeatedly mishandled by that court's administrative apparatus -- should have been deemed pending by operation of the Pennsylvania mailbox rule when McKeithan filed his February 2001 federal habeas petition. This raw fact, considered in the total context of McKeithan's appropriate good faith efforts to obtain collateral review of his conviction in the face of the extraordinary series of adverse circumstances he faced, justifies equitable tolling of the one-year federal habeas limitations period.

I

In my view, the central facts as to equitable tolling encompass all that happened to McKeithan post-conviction at the hands of the Commonwealth and its appointees before and after August 11, 1996. That they concede equitable tolling through that date does not render irrelevant the underlying facts that prompted that concession; those facts remain central to the question of whether McKeithan responded with reasonable diligence to the circumstances which he experienced. Those facts are:

10

In 1985, on direct appeal, the Superior Court held that McKeithan's post-trial counsel, by failing to file written motions the trial court directed him to file, forfeited McKeithan's right to challenge the effectiveness of his trial counsel. In 1994, McKeithan filed a timely pro se petition for post-conviction relief (a "PCRA petition"). Counsel appointed to assist McKeithan -- without interviewing or even meeting him -- filed an "amended" petition and withdrew McKeithan's request for an evidentiary hearing. The amended petition dropped the issues McKeithan had raised (including ineffective assistance of trial and appellate counsel) and raised only a single issue in its place -- and that one which was clearly not cognizable through a PCRA petition. When the Court of Common Pleas denied the PCRA petition, McKeithan's appointed counsel failed to file an appeal (although state law required appointed PCRA counsel to continue representing a petitioner through any appeals process). Faced with these difficulties, McKeithan attempted to perfect and protect his rights in at least the following ways:

- September 1, 1995 -- filed a timely pro se appeal from the dismissal of his PCRA petition;

- November 1995 -- sent a letter inquiring about the status of his appeal;

- February or March 1996 -- having received no response, sent a second letter inquiring about the status of his appeal;

- March or April 1996 -- received a letter (dated March 26, 1996) from the Prison Liaison Unit of the Clerk of Quarter Sessions confirming that it had received his filing and forwarded it to the Appeals Unit on September 13, 1995;

- June 1, 1996 -- sent a third letter asking about the status of his appeal;

11

- June 1996 -- received a letter (dated June 6, 1996) from the Appeals Unit stating that no appeal had been docketed on his behalf;

- June 13, 1996 -- submitted a second copy of the pro se notice of appeal filed nine months earlier;

- June or July 1996 -- received a response (dated June 24, 1996) from the Superior Court Prothonotary suggesting (without authority) that McKeithan instead file for permission to file his appeal nunc pro tunc;

- July 8, 1996 -- filed a nunc pro tunc petition;

- July or August 1996 -- received a letter (dated July 11, 1996) from the Prison Liaison Unit saying that it had received and forwarded his petition to the Appeals Unit;

- August 5, 1996 -- sent a fourth letter asking about the status of his appeal;

- August 1996 -- received a letter (dated August 8, 1996) from the Appeals Unit notifying him that it had not received his petition from the Prison Liaison Unit and suggesting that he send another copy;

- August 11, 1996 -- sent a letter to the Clerk of Quarter Sessions detailing the problems he had faced filing his appeal and asking for help resolving these problems;

- After August 11, 1996 -- claims to have sent the Appeals Unit a second copy of his nunc pro tunc petition;[4]

- January 16, 1997 -- still having heard nothing by the last day an inmate convicted before 1996 could file a first PCRA petition, continued his efforts by filing a new petition re-raising the same issues raised in his first petition;

- February 25, 2000 -- continued to pursue his second PCRA petition until the Pennsylvania Supreme Court denied his petition for leave to file an appeal

---

[4]   It is my understanding that the only dispute as to the facts recited thus far is whether, and when, McKeithan sent this second copy of the nunc pro tunc petition, which would be his fourth (and superfluous) attempt to file this appeal. The record does not separately document this attempted filing.

12

<u>nunc pro tunc</u>;[5]

- August 14, 2000 -- attempted yet a third time to have the Commonwealth consider the merits of his claims on collateral review, filing a "Motion to Correct Sentence";

- February 21-25, 2001-- filed his federal habeas petition;[6]

## II

Given these facts, there are two interrelated bases on which McKeithan's federal habeas petition should be considered timely.

## A

First, in my view, McKeithan's September 1995 appeal of the dismissal of his original PCRA petition should be deemed filed as of that date by operation of the Pennsylvania mailbox rule; it remained pending when he filed his February 2001 federal habeas petition.

The Pennsylvania prisoner mailbox rule applies even if a filing is never docketed. <u>Pro se</u> filings by prisoners entitled to the benefit of the mailbox rule are deemed filed as of the date of mailing, and remain pending despite any mishandling by a court's administrative apparatus. <u>Commonwealth v. Castro</u>, 766 A.2d 1283, 1289 (Pa. Super. Ct. 2001) (PCRA petition that was never docketed was deemed filed and remained pending

---

[5]    McKeithan claims he filed his appeal papers two days late (August 21 rather than August 19, 1999) because a prison-wide lockdown prevented him from mailing it earlier.

[6]    The petition was signed February 21, 2001 and docketed February 26, 2001, so must have been mailed before the latter date.  The federal habeas petition is deemed filed as of its mailing date pursuant to the federal prison mailbox rule.

13

four years after it was mailed).[7]  The improper handling of a PCRA petition is "not an appealable event" because, in such a case,  "no order [is] entered from which Appellant could appeal."  Id.

So here, the state court system's repeated (and well-documented) failures to physically docket McKeithan's appeal of his initial PCRA petition were similarly "not appealable events."  McKeithan's timely mailed appeal of September 1995 thus should have been deemed filed.  Since no court has ruled on it to this day, it is still pending under state law.  Nor did any state court, in the context of McKeithan's later filings, hold that McKeithan's initial PCRA petition was no longer pending or otherwise rule on its status.  Cf. Castro, 766 A.2d at 1285-87 (filing of second petition triggered inquiry into never-docketed petition, which was held still pending).  Therefore, the federal petition should be considered timely because, but for the state's extraordinarily improper handling of McKeithan's appeal and its failure to recognize the continued pendency of his state petition, the federal limitations period would have been statutorily tolled, thereby preserving McKeithan's access to collateral federal review.

B

---

[7]    The majority would distinguish Castro on the ground that there, but not here, it was conceded that the pro se petition was timely mailed and received but not docketed.  I see no basis for this distinction.  The Commonwealth here does not dispute McKeithan's statement, which the record supports, that he timely mailed his pro se notice of appeal. The record includes a letter from the Prison Liaison Unit of the Clerk of Quarter Sessions to McKeithan confirming that it received his pro se filing in September 1995. JA 197. At oral argument, counsel for the Commonwealth conceded that McKeithan's appeal was never docketed due to "governmental interference."

14

Second, applying the traditional equitable tolling test on which the majority opinion relies, the circumstances McKeithan faced -- abandonment or other serious misconduct by appointed counsel on direct and collateral review, repeated and prejudicial errors by the state court's clerical staff in not docketing his filings and providing unauthorized erroneous and damaging legal advice, as well as that court's rote denials of his later pro se attempts to point out these errors or otherwise seek relief -- are truly extraordinary. Collectively, they denied him any effective state post-trial review of his conviction.

A question remains whether, and for how long, McKeithan was reasonably diligent in pursuing his claims in the face of these extraordinary circumstances. I am not persuaded that the five-month delay between McKeithan's August 11, 1996 letter and his filing a second PCRA petition was unreasonable. Indeed, even though his first PCRA petition was pending in state court as a matter of law, McKeithan nevertheless did everything asked of or suggested to him -- and more. McKeithan was entitled to wait some reasonable time for a response to his August 11, 1996 letter. Moreover, it would be reasonable for any litigant (especially a pro se litigant) to be frustrated and confused in the face of these inexplicable errors and to need time to decide how to proceed next.

In similar circumstances, the Ninth Circuit noted that a "private party, especially a prisoner, will be at a loss for what to do, other than wait, if a court fails to respond to . . . an inquiry" into the status of a petition that should be pending. Huizar v. Carey, 273 F.3d

15

1220, 1224 (9th Cir. 2001). In <u>Huizar</u>, as in <u>Castro</u>, the court held that a prisoner whose state habeas petition was sent but "never filed by the court" was entitled to have the petition "deemed filed" as of the time it was delivered to prison officials for filing. <u>Id.</u> at 1223. The <u>Huizar</u> court held that a prisoner "gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." <u>Id.</u> In <u>Huizar</u>, the Ninth Circuit held that the petitioner could establish "reasonable diligence" by showing that he sent a letter of inquiry two months after mailing his state petition, a second copy of his petition after "wait[ing] an additional <u>twenty-one months</u>," and another letter five months later. <u>Id.</u> at 1224 ("Only after this second letter -- Huizar's fourth mailing to the court -- did the court respond.") (emphasis added).[8]

McKeithan's next step -- filing a new PCRA petition on January 16, 1997, the last

---

[8]    I do not cite <u>Huizar</u> to apply the Ninth Circuit's interpretation of the mailbox rule to a Pennsylvania case. In fact, Pennsylvania had already decided -- in <u>Castro</u>, eleven months before <u>Huizar</u> was decided -- that its mailbox rule operates to deem <u>pro se</u> petitions filed when sent even if the state court's administrative apparatus fails to docket them. <u>Castro</u> and <u>Huizar</u> both rely heavily on the Supreme Court's analysis in <u>Houston v. Lack</u>, 487 U.S. 266 (1988). <u>See</u>, <u>e.g.</u>, <u>Huizar</u>, 273 F.2d at 1223 ("<u>Houston</u>'s rationale applies with equal force" even if "a prisoner's petition is never filed by the court."); <u>Castro</u>, 766 A.2d at 1286-87 (citing "landmark" <u>Houston</u> case).
       <u>Huizar</u> is relevant primarily because its similar circumstances make it a useful analogy in determining whether McKeithan has been "reasonably diligent." The question of reasonable diligence is part of the equitable tolling analysis and, as such, is a question of federal law. Other panels of this Circuit have similarly analogized to cases from other circuits on equitable tolling issues. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Hendricks</u>, 314 F.3d 159, 163 (3d Cir. 2002) (citing Second, Eighth, Ninth, and Eleventh Circuit cases); <u>Robinson v. Johnson</u>, 313 F.3d 128, 143 (3d Cir. 2002) (citing Second, Fifth, and Ninth Circuit cases).

day on which someone convicted before 1996 could file a first PCRA petition -- seems reasonably diligent. McKeithan gave the Commonwealth as long as he possibly could to remedy its mishandling of his first petition before protecting himself through other means, in case (as in fact happened) it did not correct its errors. Indeed, his filing on the eve of the PCRA deadline reflects not so much lethargy as diligent attention to a deadline which he could reasonably have thought might bar his access to state, and ultimately federal, relief. And it seems objectively reasonable for McKeithan to have delayed filing his federal habeas petition while he could have understood, also reasonably, that the second state petition was pending.

The reasoning of Fahy v. Horn supports finding that McKeithan acted "diligently and reasonably" by pursuing state relief he could reasonably have believed proper while holding off on a federal petition. 240 F.3d 239, 245 (3d Cir. 2001) (filing fourth state petition that turned out to be untimely was "reasonable" in light of "inhibitively opaque" state of the law, and it was reasonable to postpone federal habeas filing in the meantime). Fahy was a death penalty case. Because "death is different," the Fahy court held that "less than 'extraordinary' circumstances [could] trigger equitable tolling." 240 F.3d at 244-45. The Fahy court then went on to ask if Fahy had "diligently and reasonably asserted his claims." Id. at 245. Its analysis on the issue of reasonable diligence is not tied or restricted to the death penalty context and is relevant here. Cf. Merritt, 326 F.3d at 169-70 (even though Fahy supported finding petitioner "acted diligently and reasonably,"

17

reasonable diligence was insufficient to trigger equitable tolling in non-death penalty case since petitioners in such cases, unlike in Fahy, must show extraordinary circumstances). There was, however, no claim in Merritt that extraordinary circumstances, or anything other than legal uncertainty, caused the petitioner to file an untimely PCRA petition. By contrast, here, the only reason that McKeithan filed a second -- and third -- PCRA petition was that the Commonwealth grossly mishandled his first petition.

Accordingly, I would find McKeithan reasonably diligent -- and the federal limitations period equitably tolled -- throughout the time he could have reasonably believed his second PCRA petition was pending, that is, through February 25, 2000. Because his federal habeas was filed within one year of that date, it should be considered timely.

C

In addition to the foregoing procession of unfortunate and extraordinary circumstances, we have the further "extraordinary circumstance" of an appointed counsel in federal court manifestly confused about the relevance of the Pennsylvania prison mailbox rule to this case. At oral argument, McKeithan's appointed counsel stated, in response to a series of possibly confusing questions of mine as to the status of the first petition, that it was "not pending."

Counsel's apparent failure to understand this issue does not change the legal effect of the Pennsylvania mailbox rule. Nor, in my view, did counsel's response effectively

18

abandon McKeithan's legal right to rely on, or preclude us from considering, Pennsylvania's failure to accord McKeithan the benefits of the mailbox rule as a basis for equitable tolling. Appellate courts regularly review "plain error" committed by district courts despite the failure of appellant's trial counsel to object. Appellate courts also have the authority to address even errors to which no objection is raised on appeal, as this Circuit recognized, invoking Supreme Court authority in a similar habeas by an inmate who had unsuccessfully invoked the Pennsylvania Post-Conviction Relief Act to observe:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

Banks v. Horn, 271 F.3d 527, 533 n.4 (2001) (citing Silber v. United States, 370 U.S. 717, 717-18 (1962)), rev'd on other grounds, 536 U.S. 266 (2002) (remanding for consideration of whether legal rule could be applied retroactively).

As the following excerpt, transcribed unofficially from the oral argument tape, reveals, to my satisfaction at least, McKeithan's counsel was quite confused about the status of her client's first petition:

Oberdorfer, J.:    And this document [the March 26, 1996 letter from the Prison Liaison Unit confirming it had received and forwarded McKeithan's filing], a necessary inference from it is that the petition or motion [appealing the denial of McKeithan's first PCRA petition] was put in the prison mail system?

Counsel:    Yes, it would have to be put in the prison mail system ... or given to the hands of one of the people in authority there for it

19

|                |                                                                 |
|----------------|-----------------------------------------------------------------|
|                | to get to the Clerk of Quarter Sessions.                         |
| <u>Oberdorfer, J.:</u> | Well, now, what about the mailbox rule?                   |
| <u>Counsel</u>:  | Well, the mailbox rule states that a petition is deemed, or document, is deemed filed when it is placed in the hands of the prison officials. |
| <u>Oberdorfer, J.:</u> | And why isn't this document entitled to being treated as deemed filed? |
| <u>Counsel</u>:  | I don't know, Your Honor.  Honestly, I don't know.            |
| <u>Oberdorfer, J.:</u> | Well, if you don't know, who would know?                 |
| <u>Counsel</u>:  | I don't know why it wasn't treated as filed. . . .           |

In context, counsel may have been addressing the factual question why the Pennsylvania court system failed to apply the prison mailbox rule to McKeithan's appeal -- a question she quite understandably could not answer -- rather than the legal question of whether the rule <u>should have</u> been applied to that appeal.  She might well have given a different answer if she had understood me to be asking the latter question.

In any event, this is an equitable tolling case.  As Judge Becker observed in the seminal Circuit decision in this area:

> For the guidance of the district court, we observe that equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair.  Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights.  The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.

<u>Miller v. New Jersey State Dep't of Corr.</u>, 145 F.3d 616, 618-19 (3d Cir. 1998) (internal

quotations and citations omitted).

In my view, McKeithan has met the <u>Miller</u> test.  I would reverse and remand.