COMMONWEALTH of Pennsylvania, Appellee

v.

Jorge Luis CASTRO, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 18, 2000. Filed Jan. 16, 2001.

Michael D. Dautrich, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for the Com., appellee.

Before CAVANAUGH, STEVENS and BROSKY, JJ.

BROSKY, J.

¶ 1 This is an appeal from an order dismissing a PCRA petition as untimely. The question this case presents is whether a PCRA petition prepared *pro se* by a prisoner is "filed" when duly deposited in the United States Mail and addressed to the Clerk of Courts despite the Clerk of Courts' failure to docket the receipt of the petition.[1] Because we resolve the above question in the affirmative, we reverse.

¶ 2 On February 2, 1995, Appellant was convicted in a jury trial of two counts of aggravated assault, recklessly endangering another person, three counts of simple assault, one count of terroristic threats and one count of possessing an instrument of crime. On February 14, 1995, Appellant filed a notice of appeal to this court. On October 25, 1995, we affirmed Appellant's judgment of sentence. Appellant subsequently filed a petition for allowance of

1. Appellant's Statement of Questions Presented on Appeal raises two questions for our review. Restated for clarity, they are: whether the *pro se* PCRA petition he mailed from prison to the Clerk of Courts on May 19, 1997, and which was received by the Clerk of Courts on May 22, 1997, was timely filed, and whether the court erred in dismissing the aforesaid petition summarily without a hearing due to the Clerk of Courts' failure to docket the petition.

appeal to the Pennsylvania Supreme Court, but his petition was denied on March 22, 1996. No appeal was taken to the United States Supreme Court.[2]

¶ 3 During the pendency of his appeal, in fact a mere two days after Appellant had taken an appeal to this Court, Appellant filed a petition under the PCRA that contained allegations of ineffectiveness of trial counsel. On March 1, 1995, the petition was dismissed, without prejudice, due to the pendency of Appellant's direct appeal to this Court. However, due to the allegations of ineffectiveness of counsel, Appellant's counsel of record, Glenn D. Welsh, Esquire, was permitted to withdraw from Appellant's representation on appeal and Gail Chiodo, Esquire was appointed to represent Appellant in his direct appeal to this Court.

¶ 4 Apparently undaunted by the dismissal of his premature PCRA petition, and apparently not content to await the decision of this Court on direct appeal, Appellant retained private counsel, Thomas Quinn, Esquire, in July of 1995, for purposes of filing an eventual PCRA petition. Despite his entering into a "fee agreement" to represent Appellant, Mr. Quinn never filed an appearance for Appellant in any court at any time.

¶ 5 Unfortunately, and for reasons not appearing on the record, Mr. Quinn did not discharge his obligations to Appellant and never filed a PCRA petition in Appellant's behalf despite taking a considerable fee from Appellant.[3] Instead, on April 27,

1997, Mr. Quinn wrote to Appellant to inform him that he had failed to file a timely PCRA petition. Less than a month later, on May 20, 1997, Appellant had completed the standard/preprinted form for post conviction relief supplied at the prison and mailed it to the Clerk of Courts of Berks County. Appellant's PCRA petition was received on May 22, 1997, but the Clerk of Courts did not docket the petition, instead forwarding the petition to Appellant's conflict/direct appeal counsel, Gail Chiodo, who was Appellant's last noted counsel of record.[4] There is no evidence that Ms. Chiodo took any action whatever with respect to Appellant's PCRA petition.[5]

¶ 6 On July 30, 1999, Appellant submitted another *pro se* PCRA petition to the Clerk of Courts which was entitled "Post Conviction Petition Nunc Pro Tunc." Unlike Appellant's offering of May 22, 1997, the Clerk of Courts duly docketed this petition. The petition was forwarded to the Honorable Scott D. Keller, who, on August 3, 1999, appointed Thomas Roman, Esquire to represent Appellant. A mere three weeks and one day later, Appellant's appointed counsel filed a Motion to Withdraw asserting that there were no issues of merit to be pursued. On September 21, 1999, Appellant was once again left to fend for himself when Mr. Roman's motion to withdraw was granted. Also that day, the court issued an order indicating its intent to dismiss the PCRA petition without a hearing. On October 14, 1999, with no

---

2. This is relevant for determining the deadline for filing a PCRA petition.

3. This matter became the subject of a fee dispute that was resolved in Appellant's favor by the Fee Disputes Committee of the Philadelphia Bar Association.

4. It is uncertain why the Clerk of Courts took this unusual step. A possible explanation is that Appellant checked the box on the PCRA petition indicating that he was represented by counsel. However, the text typed in immediately underneath this box indicated that Appellant was "currently in contact with an attorney whom (sic) is prepared to enter his

appearance as counsel of records (sic) as soon as Thomas R. Quinn ESQ. *gives me back the $4,000 I paid him to file a PCRA that he did not file."* The italicized portion of the sentence had a line through it, but was clearly legible.

5. Appellant's brief and answer to notice of intent to dismiss indicates that after being informed that his petition had been forwarded to Ms. Chiodo, he wrote Ms. Chiodo, prior to the expiration of the period for filing a petition, and asked her if she would be taking action on his behalf with respect to the PCRA. Appellant contends no response was forthcoming.

response to the notice of intent to dismiss having been received, the court dismissed Appellant's petition. As fate would have it, the following day the court received Appellant's response to the notice of intent to dismiss which vigorously opposed dismissal.

¶ 7 On October 31, 1999, Appellant sought reconsideration of the order dismissing his petition and cited the "prisoner mailbox rule" as grounds for reconsideration. On November 9, 1999, the court granted Appellant's motion for reconsideration and vacated the October 14, 1999 order dismissing Appellant's PCRA petition. The consideration proved brief, however, as that same day another order was entered dismissing Appellant's petition. Appellant filed a timely appeal from the November 9, 1999 order dismissing his PCRA petition which brings us to the current juncture.

¶ 8 In the present case it is not disputed that sometime after Appellant had unsuccessfully pursued an appeal of his conviction, he filed a PCRA petition *pro se*.[6] In this respect, the present case is not different than literally hundreds of cases, if not more, that pass through this Court on an annual basis. Moreover, it is not disputed that when Appellant "posted" the envelope containing his *pro se* petition he was within the considerably more restrictive time requirements set forth in the 1995 amendments to the PCRA.[7] Yet, the Clerk of Courts, perceiving that Appellant was "represented by counsel" and apparently perceiving itself as obligated, under Pa.

R.Crim.P. 9022(c)[8], to forward the petition to counsel rather than docket the same, chose not to docket the receipt of the petition and instead forwarded the document to Appellant's last known counsel of record, Gail Chiodo.[9] As a result, Appellant, who took the same steps as hundreds, if not thousands, of convicted individuals before him, has been told that his post-conviction collateral attack on his conviction/judgment of sentence cannot be reviewed because it is untimely.

¶ 9 In examining the procedural posture of the present case, the PCRA court concluded that as Appellant's May 1997, petition had not been docketed, it had not been "filed" and, thus, was not a "valid" PCRA petition. Consequently, the court treated the first petition as a nullity and focused on the subsequent petition filed on July 30, 1999, finding that petition untimely. Although we understand the PCRA court's rationale, in our view the court's analysis elevates what is essentially a ministerial act of the Clerk of Courts to a substantive legal factor which not only controls the timeliness of Appellant's petition but also his substantive right to seek relief. We find this posture contrary to fundamental concepts of due process as well as the essential premise of the mailbox rule.

¶ 10 Since the act of actually docketing the petition is an act outside of the control of the litigant, it would seem contrary to due process concepts to hinge a litigant's valuable rights to this act. Stated alternatively, it would seem inconsistent with no-

---

6. Black's Law Dictionary defines the term *pro se* as follows: "For oneself; on one's own behalf; without a lawyer...." Thus, the term *pro se* does not technically mean the status of being without representation, but rather, the act of taking steps by oneself for oneself.

7. The time for taking an appeal to the United States Supreme Court expired on June 20, 1996. Thus, Appellant's judgment of sentence became "final," for PCRA purposes, as of that day obligating him to file a PCRA petition by June 20, 1997.

8. Rule 9022(c) provides:

(c) In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of court's shall not docket or record it, but shall forward it to the defendant's attorney within 10 days of receipt.

9. This was done despite the fact that Appellant's petition indicated that Gail Chiodo was not representing him for PCRA purposes and that counsel that had been retained for the purposes of filing a PCRA petition had not done so. *See*, Appellant's *pro se* PCRA petition, paragraph 8.

tions of fundamental fairness if a litigant could lose valuable rights due solely to the acts, or failure to act, of an administrative office. Fundamental concepts of fairness would suggest the need to focus upon the actions of the litigant as they relate to the preservation or loss of essential rights. Indeed, it is unlikely that this concept permeates the so-called "prison mailbox rule" by mere happenstance.

¶ 11 In the landmark cases of *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) and *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the United States Supreme Court adopted a rule that treated a prisoner's mailing of a notice of appeal as the equivalent of "filing" the notice. The Court first considering the dilemma of a prisoner "filing" documents via the mail in *Fallen* and concluded that Rule 37(a), which required the filing of a notice of appeal within ten days, could not be read literally to bar Fallen's appeal, which arrived after expiration of the ten-day period, because, under the circumstances of that case, Fallen "had done all that could reasonably be expected to get the letter to its destination within the required 10 days." *Fallen,* 378 U.S. at 144, 84 S.Ct. at 1692. Expounding further upon this concept in *Houston v. Lack,* the Court offered the following commentary on the matter:

> We conclude that the analysis of the concurring opinion in *Fallen* applies here and that petitioner thus filed his notice within the requisite 30–day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the District Court. The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court

received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

¶ 12 The above commentary and the attendant holding make clear that the term "file" cannot be completely equated with the purely ministerial act of docketing the receipt of a legal document. Rather, the act of "filing" a document is far more a legal construct that focuses as much, if not more, upon the act of the litigant in placing the document in the hands of the appropriate ministerial office than in the actual act of docketing the receipt of the document.[10]

¶ 13 The prisoner mailbox rule has been expressly adopted in Pennsylvania and extended to the "filing" of PCRA petitions. According to *Commonwealth v. Little*, 716 A.2d 1287 (Pa.Super.1998), "[t]he prisoner mailbox rule provides that the date of delivery of the PCRA petition by the defendant to the proper prison authority or to a prison mailbox is **considered the date of filing of the petition**." (Emphasis added.) Since, in the present case, Appellant mailed his *pro se* PCRA petition prior to the expiration of the time for filing a PCRA petition, under *Little*, Appellant's PCRA petition was "timely filed" when delivered to the proper authorities. This premise begs the question, if the PCRA petition was "filed" when deposited with the prison mail authorities, what is the effect of the Clerk of Courts' failure to docket receipt of the same? The answer would seem simple, from a logical standpoint, if the petition was "filed" when mailed, nothing that transpired after the delivery of the envelope containing the *pro se* PCRA petition to the proper authorities can change this crucial fact, not even the failure, or refusal, of the Clerk of Courts to docket the receipt of the petition. The Clerk of Courts' failure/refusal to **docket**

the same may represent a ministerial failure or error on its part, and Appellant may even be deemed partly or wholly responsible for the Clerk of Courts' failure to docket the petition. Nevertheless, the failure to docket the arrival of the petition does not control the determination of whether or not Appellant's petition was timely "**filed.**" It is a matter that wholly post-dates the "filing" of the petition.

■ ¶ 14 Moreover, we conclude that the Clerk of Courts erred in failing to docket the PCRA petition as well as in forwarding the petition to Appellant's former counsel. As Appellant correctly points out, his prior counsel's stewardship is deemed to be over once the direct appeal process has expired or been exhausted. Pennsylvania Rule of Criminal Procedure 316(c)(iii) states "where counsel has been assigned, such assignment shall be effective until final judgment, including any proceedings upon direct appeal." In the realm of criminal law a judgment of sentence is deemed "final" when all avenues of appeal have been exhausted or when the time for taking an appeal to a higher court has run. *Commonwealth v. Ginglardi*, 758 A.2d 193 (Pa.Super.2000). Thus, by implication, Rule 316 indicates that a counsel's stewardship ends once the judgment becomes final, which occurs when the possible avenues of direct appeal are exhausted.

■ ¶ 15 Conversely, caselaw indicates that the PCRA does not apply until there is a "final judgment." See *Commonwealth v. Fralic*, 425 Pa.Super. 581, 625 A.2d 1249 (1993). Indeed, it was for this reason that Appellant's "first" PCRA petition was dismissed without prejudice, an appeal was pending to this court that made the peti-

---

**10.** This premise is supported by the United States Supreme Court's acknowledgement in *Houston* that a notice of appeal is normally deemed "filed" when received by the clerk of courts even if not yet formally "filed" by the clerk. The Court commented "the rationale for concluding that receipt constitutes filing in the ordinary civil case is that the appellant has no control over delays between the court clerk's receipt and formal filing of the no-

tice.... the lack of control of *pro se* prisoners over delays extends much further than that of the typical civil litigant: pro se prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Id.* 487 U.S. at 273–74, 108 S.Ct. at 2383–84.

tion premature. Moreover, by definition, proceedings under the PCRA are deemed **collateral** to the proceedings that resulted in conviction. Thus, while absent leave of court, counsel is attached to a client through trial and direct appeal, *Commonwealth v. Keys*, 397 Pa.Super. 453, 580 A.2d 386 (1990), and while a counsel attached to a collateral challenge might also be obligated to represent the client through subsequent appeals unless permitted to withdraw, there is no basis in logic to presume that an attorney's attachment in trial or direct appeal proceedings extends to a proceeding collateral to the direct challenge. *In accord, Commonwealth v. Quail*, 729 A.2d 571 (Pa.Super.1999). Moreover, there had been no entry of an appearance by other counsel subsequent to Ms. Chiodo's representation. Thus, despite the Clerk of Courts' misperception to the contrary, Ms. Chiodo was no longer Appellant's counsel, there was no basis for presuming Ms. Chiodo was currently representing Appellant and no other attorney had entered an appearance on Appellant's behalf. Thus, by default, Appellant was clearly "unrepresented" when he filed his petition *pro se.*

¶ 16 It could be argued that Appellant precipitated the Clerk of Courts' failure to docket the petition because he checked the box on his PCRA petition indicating that he was represented by counsel. However, as noted above, if, under the mailbox rule, Appellant's petition was "filed" when deposited in the mail, the Clerk of Courts' failure to docket the petition is immaterial. Moreover, had Appellant's petition been given even a cursory perusal at that juncture, the fact that Ms. Chiodo was not representing Appellant, but, rather, that Appellant was proceeding *pro se*, pending a possible appearance of privately retained counsel, would have been readily apparent. Unfortunately, all that the forwarding of Appellant's petition to counsel no longer involved in the case was likely to accomplish was delay and possible ignorance of the petition, which is precisely what occurred. If there were any question as to whether Appellant was currently represented by counsel, prudence would seemingly dictate that the petition should have been docketed, not forwarded to a disinterested counsel.[11] Consequently, there was no reason for the Clerk of Courts to refuse to docket the petition and forward the petition to Ms. Chiodo.[12]

¶ 17 We find additional support for our decision in the recently filed case of *Com-*

---

11. We would note that the policy of this court when a litigant files a brief *pro se* but is represented by counsel is to accept the brief for filing, but decline review of the brief if a counseled brief is filed at any time. See *Commonwealth v. Ellis*, 398 Pa.Super. 538, 581 A.2d 595, 600 (1990). Perhaps the Rules of Criminal Procedure should be amended to provide for a similar approach by the Clerk of Courts with respect to PCRA petitions. Such an amendment would enable an imprisoned individual to take matters into his own hands should his counsel not act in his best interests, thus preventing a situation like the one found here.

12. It cannot be disputed that hundreds, if not thousands, of PCRA reviews are initiated by the filing of a *pro se* petition under the PCRA. In the overwhelming majority of these cases, counsel is subsequently appointed and an independent review is conducted. If then deemed appropriate, counsel will often supplement the *pro se* petition with a counseled follow-up petition. Since the number of cases where a criminal defendant proceeds *pro se* through trial is small, it can be stated that, if the Berks County Clerk of Courts' course of action were validated in this case it would mean that the routine acceptance of *pro se* PCRA petitions is in error, since in virtually all cases the defendant had been previously represented by counsel. This is not only nonsensical, but would foster incredible inefficiency if adopted throughout the Commonwealth. Since often the attorney who had represented the defendant at trial or through an appeal will no longer be engaged to represent the defendant in post-conviction proceedings, or, if his/her ineffectiveness is being claimed, will be ineligible to further represent the criminal defendant, automatically presuming that the last shown counsel is still representing the defendant in the PCRA process will often result in the forwarding of a petition to a disinterested or ineligible counsel. This would wreak havoc with the efficient administration of the PCRA process.

*monwealth v. Jerman,* 762 A.2d 366, 2000 PA Super 325, filed 10/31/00. Indeed, *Jerman* was decided upon remarkably similar facts. In *Jerman* a prisoner mailed a document purporting to be a PCRA petition from prison within the prescribed period for filing, only to have the petition subsequently returned to him by the Deputy Court Administrator because it was deemed "not the correct paperwork." Jerman responded by completing the prison supplied forms with identical allegations and again mailing the document to the Clerk of Courts. However, the newly mailed PCRA petition was received after expiration of the time for filing and was ultimately dismissed as untimely. A panel of this Court vacated and remanded, concluding that a PCRA petition need not be on any particular form and that the date of mailing the first document was considered the filing date. In so holding, the panel ignored events occurring after the document had been mailed, including the Clerk of Courts' failure to docket the receipt of the document and the returning of the document to the petitioner, and instead focused on when the document was placed in the mail. Although not specifically couched in the same terms, *Jerman* supports the premise that the docketing of receipt by the Clerk of Courts is not the pivotal factor in determining when a PCRA petition was "filed," but rather, the pivotal factor is the steps taken by the prisoner to get the petition to the proper filing office.

¶ 18 Thus, in light of the above analysis, the inescapable conclusion is that Appellant's PCRA petition received by the Clerk of Courts on May 22, 1997, was indeed "filed," for PCRA purposes and, moreover, was filed within the applicable time constraints. Thus, the court's conclusion to the contrary must be rejected. Since the

court rejected this petition and never ruled on its merits, we must remand for a consideration of the merits of that PCRA petition.[13] In keeping with this line of thought, the subsequent petition should be viewed as a nullity and has no bearing on the above analysis.

¶ 19 Order reversed, remanded for further proceedings. Jurisdiction relinquished.

¶ 20 STEVENS, J., files a Dissenting Opinion.

SEVEN, J., dissenting:

¶ 1 I respectfully dissent from the Majority decision to reverse a lower court order dismissing a PCRA petition as untimely. Initially, at the very least, I would remand the present case in order to determine how Appellant was entitled to two separate appointed counsel and yet retained his own PRIVATE counsel, all for the purpose of filing an eventual PCRA petition. For example, the lower court should make a finding as to whether or not Appellant misrepresented his economic status when he obtained court-appointed attorneys and yet apparently had the funds to retain his own private attorney.

¶ 2 Moreover, Appellant by his own actions in not awaiting the decision of this Court on direct appeal, and in retaining private counsel who did not file a PCRA petition, may have been the cause of his own untimeliness.

¶ 3 There is simply no reason to give Appellant the benefit of doubt by reversing the trial court without first determining whether or not Appellant's own actions caused the eventual untimeliness. I would therefore remand.

13. It is notable that although the court retrospectively viewed the May 22, 1997 petition as "invalid," no order was entered from which Appellant could appeal at that time. The trial court's view of the May 22, 1997, petition did not come to light until it ruled upon the subsequent petition, and the Clerk of Court's forwarding of the petition to counsel was not an appealable event.