OBERDORFER, Senior District Judge,
dissenting.
The majority affirms the district court’s dismissal of McKeithan’s petition for a writ of habeas corpus as time-barred because it concludes that equitable tolling ended on August 11, 1996, when McKeithan stopped being diligent. I respectfully dissent.
I am concerned that this result is unfair and legally unnecessary. McKeithan’s first petition for review in state court — which was repeatedly mishandled by that court’s administrative apparatus — should have been deemed pending by operation of the Pennsylvania mailbox rule when McKeithan filed his February 2001 federal habeas petition. This raw fact, considered in the total context of McKeithan’s appropriate good faith efforts to obtain collateral review of his conviction in the face of the extraordinary series of adverse circumstances he faced, justifies equitable tolling *60 of the one-year federal habeas limitations period.
I
In my view, the central facts as to equitable tolling encompass all that happened to McKeithan post-conviction at the hands of the Commonwealth and its appointees before and after August 11, 1996. That they concede equitable tolling through that date does not render irrelevant the underlying facts that prompted that concession; those facts remain central to the question of whether McKeithan responded with reasonable diligence to the circumstances which he experienced. Those facts are:
In 1985, on direct appeal, the Superior Court held that McKeithan’s post-trial counsel, by failing to file written motions the trial court directed him to file, forfeited McKeithan’s right to challenge the effectiveness of his trial counsel. In 1994, McKeithan filed a timely pro se petition for post-conviction relief (a “PCRA petition”). Counsel appointed to assist McKeithan' — -without interviewing or even meeting him — filed an “amended” petition and withdrew McKeithan’s request for an evidentiary hearing. The amended petition dropped the issues McKeithan had raised (including ineffective assistance of trial and appellate counsel) and raised only a single issue in its place — and that one which was clearly not cognizable through a PCRA petition. When the Court of Common Pleas denied the PCRA petition, McKeithan’s appointed counsel failed to file an appeal (although state law required appointed PCRA counsel to continue representing a petitioner through any appeals process). Faced with these difficulties, McKeithan attempted to perfect and protect his rights in at least the following ways:
• September 1, 1995 — filed a timely pro se appeal from the dismissal of his PCRA petition;
• November 1995 — sent a letter inquiring about the status of his appeal;
• February or March 1996 — having received no response, sent a second letter inquiring about the status of his appeal;
• March or April 1996 — received a letter (dated March 26, 1996) from the Prison Liaison Unit of the Clerk of Quarter Sessions confirming that it had received his filing and forwarded it to the Appeals Unit on September 13, 1995;
• June 1, 1996 — sent a third letter asking about the status of his appeal;
• June 1996 — received a letter (dated June 6, 1996) from the Appeals Unit stating that no appeal had been docketed on his behalf;
• June 13, 1996 — submitted a second copy of the pro se notice of appeal filed nine months earlier;
• June or July 1996 — received a response (dated June 24, 1996) from the Superior Court Prothonotary suggesting (without authority) that McKeithan instead file for permission to file his appeal nunc pro tunc;
• July 8, 1996 — filed a nunc pro tunc petition;
• July or August 1996 — received a letter (dated July 11, 1996) from the Prison Liaison Unit saying that it had received and forwarded his petition to the Appeals Unit;
• August 5, 1996 — sent a fourth letter asking about the status of his appeal;
• August 1996 — received a letter (dated August 8, 1996) from the Appeals Unit notifying him that it had not received his petition from the Prison Liaison *61 Unit and suggesting that he send another copy;
• August 11, 1996 — sent a letter to the Clerk of Quarter Sessions detailing the problems he had faced filing his appeal and asking for help resolving these problems;
• After August 11, 1996 — claims to have sent the Appeals Unit a second copy of his nunc pro tunc petition;[4]
• January 16, 1997 — still having heard nothing by the last day an inmate convicted before 1996 could file a first PCRA petition, continued his efforts by filing a new petition re-raising the same issues raised in his first petition;
• February 25, 2000 — continued to pursue his second PCRA petition until the Pennsylvania Supreme Court denied his petition for leave to file an appeal nunc pro tunc, [5]
• August 14, 2000 — attempted yet a third time to have the Commonwealth consider the merits of his claims on collateral review, filing a “Motion to Correct Sentence”;
• February 21-25, 2001 — filed his federal habeas petition;[6]
n
Given these facts, there are two interrelated bases on which McKeithan’s federal habeas petition should be considered timely.
A
First, in my view, McKeithan’s September 1995 appeal of the dismissal of his original PCRA petition should be deemed filed as of that date by operation of the Pennsylvania mailbox rule; it remained pending when he filed his February 2001 federal habeas petition.
The Pennsylvania prisoner mailbox rule applies even if a filing is never docketed. Pro se filings by prisoners entitled to the benefit of the mailbox rule are deemed filed as of the date of mailing, and remain pending despite any mishandling by a court’s administrative apparatus. Commonwealth v. Castro, 2001 PA Super 17, 766 A.2d 1283, 1289 (2001) (PCRA petition that was never docketed was deemed filed and remained pending four years after it was mailed).[7] The improper handling of a PCRA petition is “not an appealable event” because, in such a case, “no order [is] entered from which Appellant could appeal.” Id.
*62 So here, the state court system’s repeated (and well-documented) failures to physically docket McKeithan’s appeal of his initial PCRA petition were similarly “not appealable events.” McKeithan’s timely mailed appeal of September 1995 thus should have been deemed filed. Since no court has ruled on it to this day, it is still pending under state law. Nor did any state court, in the context of McKeithan’s later filings, hold that McKeithan’s initial PCRA petition was no longer pending or otherwise rule on its status. Cf. Castro, 766 A.2d at 1285-87 (filing of second petition triggered inquiry into never-docketed petition, which was held still pending). Therefore, the federal petition should be considered timely because, but for the state’s extraordinarily improper handling of McKeithan’s appeal and its failure to recognize the continued pendency of his state petition, the federal limitations period would have been statutorily tolled, thereby preserving McKeithan’s access to collateral federal review.
B
Second, applying the traditional equitable tolling test on which the majority opinion relies, the circumstances McKeithan faced — -abandonment or other serious misconduct by appointed counsel on direct and collateral review, repeated and prejudicial errors by the state court’s clerical staff in not docketing his filings and providing unauthorized erroneous and damaging legal advice, as well as that court’s rote denials of his later pro se attempts to point out these errors or otherwise seek relief — are truly extraordinary. Collectively, they denied him any effective state post-trial review of his conviction.
A question remains whether, and for how long, McKeithan was reasonably diligent in pursuing his claims in the face of these extraordinary circumstances. I am not persuaded that the five-month delay between McKeithan’s August 11, 1996 letter and his filing a second PCRA petition was unreasonable. Indeed, even though his first PCRA petition was pending in state court as a matter of law, McKeithan nevertheless did everything asked of or suggested to him — and more. McKeithan was entitled to wait some reasonable time for a response to his August 11, 1996 letter. Moreover, it would be reasonable for any litigant (especially a pro se litigant) to be frustrated and confused in the face of these inexplicable errors and to need time to decide how to proceed next.
In similar circumstances, the Ninth Circuit noted that a “private party, especially a prisoner, will be at a loss for what to do, other than wait, if a court fails to respond to ... an inquiry” into the status of a petition that should be pending. Huizar v. Carey, 273 F.3d 1220, 1224 (9th Cir.2001). In Huizar, as in Castro, the court held that a prisoner whose state habeas petition was sent but “never filed by the court” was entitled to have the petition “deemed filed” as of the time it was delivered to prison officials for filing. Id. at 1223. The Huizar court held that a prisoner “gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.” Id. In Huizar, the Ninth Circuit held that the petitioner could establish “reasonable diligence” by showing that he sent a letter of inquiry two months after mailing his state petition, a second copy of his petition after “waiting] an additional twenty-one months,” and another letter five months later. Id. at 1224 (“Only after this second letter — Huizar’s fourth mailing to the court — did the court respond.”) (emphasis *63 added).[8]
McKeithan’s next step — filing a new PCRA petition on January 16, 1997, the last day on which someone convicted before 1996 could file a first PCRA petition— seems reasonably diligent. McKeithan gave the Commonwealth as long as he possibly could to remedy its mishandling of his first petition before protecting himself through other means, in case (as in fact happened) it did not correct its errors. Indeed, his filing on the eve of the PCRA deadline reflects not so much lethargy as diligent attention to a deadline which he could reasonably have thought might bar his access to state, and ultimately federal, relief. And it seems objectively reasonable for McKeithan to have delayed filing his federal habeas petition while he could have understood, also reasonably, that the second state petition was pending.
The reasoning of Fahy v. Horn supports finding that McKeithan acted “diligently and reasonably” by pursuing state relief he could reasonably have believed proper while holding off on a federal petition. 240 F.3d 239, 245 (3d Cir.2001) (filing fourth state petition that turned out to be untimely was “reasonable” in light of “inhibitively opaque” state of the law, and it was reasonable to postpone federal habeas filing in the meantime). Fahy was a death penalty case. Because “death is different,” the Fahy court held that “less than ‘extraordinary’ circumstances [could] trigger equitable tolling.” 240 F.3d at 244-45. The Fahy court then went on to ask if Fahy had “diligently and reasonably asserted his claims.” Id. at 245. Its analysis on the issue of reasonable diligence is not tied or restricted to the death penalty context and is relevant here. Cf. Merritt, 326 F.3d at 169-70 (even though Fahy supported finding petitioner “acted diligently and reasonably,” reasonable diligence was insufficient to trigger equitable tolling in non-death penalty case since petitioners in such cases, unlike in Fahy, must show extraordinary circumstances). There was, however, no claim in Merritt that extraordinary circumstances, or anything other than legal uncertainty, caused the petitioner to file an untimely PCRA petition. By contrast, here, the only reason that McKeithan filed a second — and third — PCRA petition was that the Commonwealth grossly mishandled his first petition.
Accordingly, I would find McKeithan reasonably diligent — and the federal limitations period equitably tolled — throughout the time he could have reasonably believed his second PCRA petition was pending, that is, through February 25, 2000. Because his federal habeas was *64 filed within one year of that date, it should be considered timely.
C
In addition to the foregoing procession of unfortunate and extraordinary circumstances, we have the further “extraordinary circumstance” of an appointed counsel in federal court manifestly confused about the relevance of the Pennsylvania prison mailbox rule to this case. At oral argument, McKeithan’s appointed counsel stated, in response to a series of possibly confusing questions of mine as to the status of the first petition, that it was “not pending.”
Counsel’s apparent failure to understand this issue does not change the legal effect of the Pennsylvania mailbox rule. Nor, in my view, did counsel’s response effectively abandon McKeithan’s legal right to rely on, or preclude us from considering, Pennsylvania’s failure to accord McKeithan the benefits of the mailbox rule as a basis for equitable tolling. Appellate courts regularly review “plain error” committed by district courts despite the failure of appellant’s trial counsel to object. Appellate courts also have the authority to address even errors to which no objection is raised on appeal, as this Circuit recognized, invoking Supreme Court authority in a similar habeas by an inmate who had unsuccessfully invoked the Pennsylvania Post-Conviction Relief Act to observe:
In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.
Banks v. Horn, 271 F.3d 527, 533 n. 4 (2001) (citing Silber v. United States, 370 U.S. 717, 717-18, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962)), rev’d on other grounds, 536 U.S. 266, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (remanding for consideration of whether legal rule could be applied retroactively).
As the following excerpt, transcribed unofficially from the oral argument tape, reveals, to my satisfaction at least, McKeithan’s counsel was quite confused about the status of her client’s first petition:
Oberdorfer, J.: And this document [the March 26, 1996 letter from the Prison Liaison Unit confirming it had received and forwarded McKeithan’s filing], a necessary inference from it is that the petition or motion [appealing the denial of McKeithan’s first PCRA petition] was put in the prison mail system?
Counsel: Yes, it would have to be put in the prison mail system ... or given to the hands of one of the people in authority there for it to get to the Clerk of Quarter Sessions.
Oberdorfer, J.: Well, now, what about the mailbox rule?
Counsel: Well, the mailbox rule states that a petition is deemed, or document, is deemed filed when it is placed in the hands of the prison officials.
Oberdorfer, J.: And why isn’t this document entitled to being treated as deemed filed?
Counsel: I don’t know, Your Honor. Honestly, I don’t know.
Oberdorfer, J.: Well, if you don’t know, who would know?
Counsel: I don’t know why it wasn’t treated as filed....
In context, counsel may have been addressing the factual question why the Pennsylvania court system failed to apply the prison mailbox rule to McKeithan’s appeal — a question she quite understandably could not answer — rather than the *65 legal question of whether the rule should have been applied to that appeal. She might well have given a different answer if she had understood me to be asking the latter question.
In any event, this is an equitable tolling case. As Judge Becker observed in the seminal Circuit decision in this area:
For the guidance of the district court, we observe that equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims.
Miller v. New Jersey State Dep’t of Corr., 145 F.3d 616, 618-19 (3d Cir.1998) (internal quotations and citations omitted).
In my view, McKeithan has met the Miller test. I would reverse and remand.

. It is my understanding that the only dispute as to the facts recited thus far is whether, and when, McKeithan sent this second copy of the nunc pro tunc petition, which would be his fourth (and superfluous) attempt to file this appeal. The record does not separately document this attempted filing.

. McKeithan claims he filed his appeal papers two days late (August 21 rather than August 19, 1999) because a prison-wide lockdown prevented him from mailing it earlier.

. The petition was signed February 21, 2001 and docketed February 26, 2001, so must have been mailed before the latter date. The federal habeas petition is deemed filed as of its mailing date pursuant to the federal prison mailbox rule.

. The majority would distinguish Castro on the ground that there, but not here, it was conceded that the pro se petition was timely mailed and received but not docketed. I see no basis for this distinction. The Commonwealth here does not dispute McKeithan’s statement, which the record supports, that he timely mailed his pro se notice of appeal. The record includes a letter from the Prison Liaison Unit of the Clerk of Quarter Sessions to McKeithan confirming that it received his pro se filing in September 1995. JA 197. At oral argument, counsel for the Commonwealth conceded that McKeithan’s appeal was never docketed due to ''governmental interference.”

. I do not cite Huizar to apply the Ninth Circuit’s interpretation of the mailbox rule to a Pennsylvania case. In fact, Pennsylvania had already decided — in Castro, eleven months before Huizar was decided — that its mailbox rule operates to deem pro se petitions filed when sent even if the state court’s administrative apparatus fails to docket them. Castro and Huizar both rely heavily on the Supreme Court’s analysis in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). See, e.g., Huizar, 273 F.3d at 1223 (“Houston's rationale applies with equal force” even if "a prisoner’s petition is never filed by the court.”); Castro, 766 A.2d at 1286-87 (citing "landmark” Houston case).
Huizar is relevant primarily because its similar circumstances make it a useful analogy in determining whether McKeithan has been "reasonably diligent.” The question of reasonable diligence is part of the equitable tolling analysis and, as such, is a question of federal law. Other panels of this Circuit have similarly analogized to cases from other circuits on equitable tolling issues. See, e.g., Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir.2002) (citing Second, Eighth, Ninth, and Eleventh Circuit cases); Robinson v. Johnson, 313 F.3d 128, 143 (3d Cir.2002) (citing Second, Fifth, and Ninth Circuit cases).