NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3390
_____

HAROLD DARDEN,

Appellant

v.

RAYMOND J. SOBINA; THE DISTRICT ATTORNEY OF THE COUNTY OF
PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-03235)
District Judge:  Honorable Joel H. Slomsky
_____

Argued April 10, 2012
Before:  HARDIMAN, GREENAWAY, JR., and GREENBERG, *Circuit Judges*.

(Filed: April 25, 2012)

Raymond J. Rigat [Argued]
Suite 200
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Philadelphia, PA 19102
        *Attorney for Appellant*

Anne Palmer [Argued]
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Harold Darden, a Pennsylvania inmate, appeals from an order of the United States District Court for the Eastern District of Pennsylvania dismissing his petition for a writ of habeas corpus as time-barred. For the reasons that follow, we will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history. The prolixity of the state-court proceedings in this case requires a relatively detailed exposition.

Following a jury trial in the Court of Common Pleas of Philadelphia County, Pennsylvania, Darden was convicted of numerous state law offenses, including carrying a firearm without a license, carrying a firearm in a public street, criminal trespass, and possessing an instrument of crime. The trial court sentenced Darden on March 23, 2000, to a term of 13.5 to 49 years' imprisonment. The next day, Darden's counsel was permitted to withdraw from representation, and new counsel was appointed.

Darden filed a motion for reconsideration of his sentence on March 30, 2000. That same day, the trial court issued an order simultaneously granting Darden's motion and vacating his sentence. Darden then filed a second post-sentence motion on June 23,

2

2000, seeking permission to file a motion for reconsideration of his sentence *nunc pro tunc*. The court granted Darden permission to file the motion.

On February 13, 2001, the trial court conducted a hearing on Darden's motions for reconsideration, which alleged that the evidence at his trial was insufficient and that his trial counsel was ineffective. At the hearing, Darden's appellate counsel also argued that resentencing was justified for a variety of reasons. The trial court ultimately reduced Darden's maximum possible sentence by ten years, resentencing him to a term of 13.5 to 39 years' imprisonment.

On February 23, 2001, Darden filed yet another motion for reconsideration, challenging his new sentence and reasserting his claims of insufficiency of the evidence and ineffective assistance of counsel. A hearing originally scheduled for July 12, 2001, was rescheduled for September 4, 2001, because a lack of available prison beds prevented Darden from being transferred to the courthouse. On July 3, 2001, the trial court granted appellate counsel leave to withdraw. Because Darden's presence could not be secured within his time for appeal, pursuant to Pennsylvania Rule of Criminal Procedure 720,[1] the trial court dismissed Darden's motion on July 24, 2001. The court again appointed new counsel to represent Darden, who then filed a notice of appeal to the

---

[1] "[T]he judge shall decide the post-sentence motion . . . within 120 days of the filing of the motion," and "[i]f the judge fails to decide the motion within 120 days, or to grant [a 30-day] extension . . . the motion shall be deemed denied by operation of law." Pa. R. Crim. P. 720(B)(3)(a).

Pennsylvania Superior Court on August 29, 2001, reasserting that the evidence at his trial was insufficient and that his trial counsel was ineffective, as well as claiming that his reduced sentence constituted an abuse of discretion.

Almost a year later, on August 2, 2002, the trial court issued an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925, concluding that Darden's ineffective assistance of counsel claims were of "arguable merit." The court also noted that it had not yet had an opportunity to rule on the other issues raised on appeal because Darden's post-sentence motion was dismissed without a hearing for reasons beyond his control. The court therefore "request[ed] that the Superior Court[] open or vacate the judgment of sentence, reinstate [Darden's] right to a hearing on his post-sentence motions, and remand the case" so that a hearing could be held "without prejudice to [Darden's] right to appeal the final judgment of sentence."

Another year later, on October 27, 2003, the Pennsylvania Superior Court quashed Darden's appeal as untimely. According to the Superior Court, the trial court lacked jurisdiction to vacate Darden's sentence pending the outcome of his initial motion for reconsideration.[2] Consequently, all subsequent actions by the trial court were void for want of jurisdiction. This meant Darden's sentence became final after his first motion was denied by operation of law on July 28, 2000, and his thirty-day period for filing a

---

[2] According to the Superior Court, the trial court's order contravened Pennsylvania Rule of Criminal Procedure 720(B)(3), which states that the trial judge "shall not vacate sentence pending decision on the post-sentence motion . . . ."

notice of appeal expired on August 27, 2000.[3]  The Superior Court also noted that even if

the trial court had retained jurisdiction by entertaining Darden's second motion filed June

23, 2000, his appeal still would have been untimely because that motion expired by

operation of law on October 23, 2000, and Darden failed to appeal before the

corresponding November 23, 2000, deadline.

After the Superior Court's decision, Darden did not petition for allocatur in the

Pennsylvania Supreme Court.  Instead, on or about June 23, 2004, and August 12, 2004,[4]

he filed two *pro se* petitions under Pennsylvania's Post-Conviction Relief Act (PCRA).[5]

These petitions raised a host of issues, including ineffectiveness of counsel.  Between

February 15 and September 13, 2006, Darden underwent two more changes of counsel.

On December 6, 2006, Darden's new counsel filed a "no-merit" letter pursuant to

*Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc), advising the

---

[3] "If the defendant files a timely post-sentence motion, the notice of appeal shall be filed . . . within 30 days of the entry of the order deciding the motion [or] within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion. . . ."  Pa. R. Crim. P. 720(A)(2); *see also* Pa. R. App. P. 903 (imposing a 30-day deadline for filing a notice of appeal).

[4] These are the dates on which Darden's petitions were docketed.  Pursuant to Pennsylvania's "prisoner mail box rule," PCRA petitions are deemed filed on the date they are delivered to prison authorities for mailing.  *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001).  The record is unclear, however, as to when prison authorities received Darden's petitions.

[5] Darden's second petition was treated as an "extension" of the first.  Darden also claims to have filed a PCRA petition on November 23, 2003, but the record contains no evidence of this petition.

PCRA court that Darden's petition was untimely. Counsel reasoned that the trial court lacked jurisdiction to resentence Darden and that, because his second motion for reconsideration of the original sentence was denied by operation of law on October 23, 2000, Darden's time for seeking direct appeal expired on November 23, 2000. Darden's window for seeking PCRA review accordingly closed on November 23, 2001,[6] rendering his subsequent PCRA petition untimely. As a result of counsel's *Finley* letter, the PCRA court dismissed Darden's petition on March 21, 2007. Darden filed a *pro se* notice of appeal on April 12, 2007.

Following Darden's notice of appeal, the PCRA court issued an opinion as required by Pennsylvania Rule of Appellate Procedure 1925. The court concluded that it had erred in holding Darden's petition to be untimely. Citing Pennsylvania case law, the court reasoned that his sentence became final not on November 23, 2000, as his counsel had concluded, but on November 26, 2003, thirty days after his direct appeal was quashed. Consequently, the court recommended that the case be remanded for appointment of counsel and a determination as to whether Darden's claims were meritorious.

---

[6] Unless it falls within one of three statutory exceptions, a PCRA petition must be "filed within one year of the date the judgment becomes final." 42 Pa. Cons. Stat. § 9545(b)(1). Judgment "becomes final at the conclusion of direct review . . . or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

The Superior Court disagreed, and on November 25, 2008, it held that Darden's petition was untimely. The court began by noting that the case law on which the PCRA court relied was abrogated by *Commonwealth v. Brown*, 943 A.2d 264 (Pa. 2008), in which the Pennsylvania Supreme Court held that when no timely direct appeal is filed from a judgment of sentence, the one-year period for filing a PCRA petition commences upon the actual expiration of the period for seeking direct review, *id.* at 268. The Superior Court therefore concluded that Darden's sentence became final on August 27, 2000, thirty days after his first motion was denied by operation of law. The court also reasoned that, even if Darden's sentence became final thirty days after his second motion was denied, his time for filing a PCRA petition expired a year later on November 23, 2001. Finally, even if Darden's time to appeal were measured from the date his third motion was denied by operation of law, his sentence became final on August 23, 2001, and the time for seeking PCRA review ended in 2002. In sum, regardless of when his sentence became final, Darden's PCRA petition was untimely because it was not filed until 2004.

This time, Darden filed an allocatur petition in the Pennsylvania Supreme Court, but that petition was denied on May 20, 2009. Having exhausted his state court remedies, on July 13, 2009, Darden filed a federal habeas petition under 28 U.S.C. § 2254. His petition alleges various due process violations and multiple instances of ineffective assistance of counsel. A Magistrate Judge issued a Report and Recommendation (R&R)

7

that Darden's petition be dismissed as untimely because it was filed more than one year after the state court judgment became final. The District Court then approved the R&R and dismissed Darden's petition on June 24, 2010. After the District Court issued its order, it belatedly received Darden's objections to the R&R and rejected them in an order dated July 6, 2010. Three days later, Darden filed an "Application for Relief *Nunc Pro Tunc* for Leave to File Objections to Report and Recommendation," which the District Court also denied on July 12, 2010.

Darden filed a timely notice of appeal, and we granted a certificate of appealability on two issues: (1) whether Darden is entitled to equitable tolling of the one year statute of limitations under 28 U.S.C. § 2244(d); and (2) whether Darden received ineffective assistance from post-trial counsel.

## II[7]

Pursuant to AEDPA, petitions for a writ of habeas corpus must be filed within one year, which begins running from the latest of four dates:

    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

---

[7] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254, and our jurisdiction lies under 28 U.S.C. §§ 1291 and 2253. We review *de novo* the District Court's legal ruling that a federal habeas petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Douglas v. Horn*, 359 F.3d 257, 259 (3d Cir. 2004).

States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The Superior Court held that Darden's sentence became final on August 27, 2000, thirty days after his first motion for reconsideration was denied by operation of law. Darden therefore had one year from that date to file a federal habeas petition. Because he failed to do so until 2009, his petition was untimely.

Darden does not allege any newly recognized constitutional rights or newly discovered evidence, so he is not entitled to the alternative start dates provided by § 2244(d)(1)(C) and (D). Nor would 28 U.S.C. § 2244(d)(1)(B) help him. Even if the trial court's numerous actions in the absence of jurisdiction led him to a reasonable belief that his time to file a federal petition had not yet begun to run, perhaps constituting an "impediment to filing" such a petition, *id.* § 2244(d)(1)(B),[8] any such impediment was removed on October 27, 2003, when the Superior Court held that Darden's time to file a direct appeal already had expired, rendering his then-pending appeal untimely. From that

---

[8] We will assume without deciding that this is the case. *See Pabon v. S.C.I. Mahanoy*, 654 F.3d 385, 404 (3d Cir. 2011) (noting that this Court has not yet addressed the meaning of "impediment to filing" under § 2244(d)(1)(B)).

9

date, Darden had notice that his window to file a federal habeas petition already had opened, *see id.* § 2244(d)(1)(A), but he waited nearly six years to file his federal petition. Thus, even assuming that Darden's time to file a federal petition began to run on October 27, 2003, his petition was untimely.

Darden therefore must argue that he is entitled to tolling of AEDPA's one-year limitations period. "The statute of limitations for federal habeas corpus petitions is subject to two tolling exceptions: (1) statutory tolling during the time a 'properly filed' application for state post-conviction review is pending in state court and (2) equitable tolling, a judicially crafted exception." *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) (citing *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999)).

A

Although not within the scope of the certificate of appealability, Darden first argues that he is entitled to statutory tolling. We recognize that we may expand the certificate of appealability, *Villot v. Varner*, 373 F.3d 327, 337 n.13 (3d Cir. 2004), but we decline to do so here because "jurists of reason would [not] find it debatable" whether statutory tolling is warranted, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). AEDPA provides for statutory tolling of the one-year limitations period only for "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). Because the application for state collateral relief must be

10

"properly" filed, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (alteration in original) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

We must "give deference to the state court's determination of the timeliness of the state PCRA petition," *Merritt*, 326 F.3d at 168, and because the state courts have held Darden's PCRA petition untimely, "it would be an undue interference for [us] to decide otherwise," *id.*; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."). As Darden's PCRA petition was found to be untimely in the state court, it was not "properly filed" and did not toll his AEDPA limitations period.

B

Finally, we turn to Darden's primary claim that he is entitled to equitable tolling. "In determining whether equitable tolling should be granted, we address two questions: (1) whether the petitioner faced extraordinary circumstances that stood in the way of timely filing; and (2) whether he or she exercised reasonable diligence." *Pabon*, 654 F.3d at 399 (citing *Pace*, 544 U.S. at 418). "There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, the particular circumstances of each petitioner must be taken into account." *Id.* (citing *Holland v. Florida*, 130 S.Ct. 2549, 2563 (2010)). "In sum, equitable tolling is appropriate when 'principles of equity would make the rigid application of a limitation period unfair,'" *id.*

11

(citing *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)), but "courts need to be 'sparing in their use of' the doctrine," *id.* (citing *Jones*, 195 F.3d at 159).

Darden contends that five extraordinary circumstances justify equitable tolling of his AEDPA deadline.[9] We need not determine whether he has demonstrated extraordinary circumstances, however, because even assuming that he did, he has not shown that he exercised reasonable diligence in filing his federal habeas petition. As we have noted, after the Superior Court quashed Darden's appeal on October 27, 2003, he was aware that his judgment of sentence was final and that his time to file a direct appeal had passed. At that point, Darden did not file a federal habeas petition claiming that extraordinary circumstances reasonably led him to the erroneous belief that his time to file a federal petition had not yet begun to run. Instead, Darden merely filed a PCRA petition in state court, which was held to be untimely and, as a result, did not toll his time to file a federal petition. Darden did not file his federal petition until 2009—almost nine years after his initial sentence became final and nearly six years after he learned that his

---

[9] According to Darden, those "extraordinary circumstances" are:

(1) his attorney's failure to make a timely notice of appeal to the state court; (2) his attorney's failure to file a petition for Allowance to Appeal to the Pennsylvania Supreme Court following the Superior Court's order quashing his direct appeal[;] (3) the state trial court's error in vacating his sentence before the thirty day waiting period expired; (4) Darden consistently and diligently asserted these errors in the state courts seeking relief as first required before seeking a federal remedy[;] and (5) Darden's procedural conundrum of having to exhaust his state law remedy before filing in federal court for relief under § 2254.

12

direct appeal would not be considered timely under Pennsylvania law. Thus, Darden was remarkably non-diligent, as he waited to file his federal petition for almost six years after learning that his time to file that petition had run out.

In defense of his lack of diligence, Darden argues that he was in a "procedural conundrum" not of his making because he was required to exhaust his state law remedies before filing in federal court. The Supreme Court has rejected this argument. *See Pace*, 544 U.S. at 416 ("[Pace] claims that a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' and thus that his federal habeas petition is time barred." (internal quotation marks omitted)). "A prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)); *see also Heleva v. Brooks*, 581 F.3d 187, 190–92 (3d Cir. 2009) (discussing the practice of filing "protective" habeas petitions in the Third Circuit). "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416 (citing *Rhines*, 544 U.S. at 278). Ultimately, therefore, Darden's "misunderstanding of the exhaustion requirement is insufficient to excuse his failure to comply with the statute of limitations." *Jones*, 195

F.3d at 160. Darden's lack of diligence precludes equitable tolling of his federal habeas petition, and absent such tolling, his petition was untimely.

III

For the reasons stated, we will affirm the District Court's order dismissing Darden's habeas petition.